**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of __Delaware__
                            (State)

Case number (*if known*): _____ Chapter __11__

❑ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Renovate America, Inc. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | f/k/a Powerhouse Service, Inc., RAI |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 2 6 – 4 1 0 4 3 5 2 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 16870  W. Bernardo Dr. Ste. 408<br>Number     Street | <br>Number         Street |
| | P.O. Box 270469<br>P.O. Box |
| San Diego          CA      92127<br>City                State     ZIP Code | San Diego          CA      92198-2469<br>City                State     ZIP Code |
| <br>County | **Location of principal assets, if different from principal place of business**<br><br>Number         Street<br><br>City                State     ZIP Code |

5. **Debtor's website** (URL)    https://www.RenovateAmerica.com/

| Debtor | Renovate America, Inc. | Case number (if known)_____ |
|---|---|---|
| | Name | |

**6. Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

❑ Partnership (excluding LLP)

❑ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

❑ Health Care Business (as defined in 11 U.S.C. § 101(27A))

❑ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

❑ Railroad (as defined in 11 U.S.C. § 101(44))

❑ Stockbroker (as defined in 11 U.S.C. § 101(53A))

❑ Commodity Broker (as defined in 11 U.S.C. § 101(6))

❑ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply:*

❑ Tax-exempt entity (as described in 26 U.S.C. § 501)

❑ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

❑ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

5   2   2   2

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

❑ Chapter 7

❑ Chapter 9

■ Chapter 11. *Check all that apply*:

❑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

❑ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

❑ A plan is being filed with this petition.

❑ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

❑ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

❑ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

❑ Chapter 12

Debtor    Personal Energy Finance, Inc.                                    Case number (if known)_____
_____
Name

| | |
|---|---|
| 9. **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**<br><br>If more than 2 cases, attach a separate list. | ☑ No<br>☐ Yes.    District _____  When _____  Case number _____<br>                                                                      MM / DD / YYYY<br>                    District _____  When _____  Case number _____<br>                                                                      MM / DD / YYYY |
| 10. **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**<br><br>List all cases. If more than 1, attach a separate list. | ☑ No<br>☐ Yes.    Debtor _____  Relationship _____<br>                    District _____  When _____<br>                                                                                    MM   /   DD   / YYYY<br>                    Case number, if known _____ |
| 11. **Why is the case filed in *this district*?** | *Check all that apply:*<br>☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.<br>☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district. |
| 12. **Does the debtor own or have possession of any real property or personal property that needs immediate attention?** | ☑ No<br>☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.<br><br>**Why does the property need immediate attention?** *(Check all that apply.)*<br>☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.<br>    What is the hazard? _____<br>☐ It needs to be physically secured or protected from the weather.<br>☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).<br>☐ Other _____<br><br>**Where is the property?** _____<br>                                               Number        Street<br>                    _____<br>                    _____  _____<br>                    City                                                             State ZIP Code<br><br>**Is the property insured?**<br>☐ No<br>☐ Yes. Insurance agency _____<br>            Contact name _____<br>            Phone _____ |

█ **Statistical and administrative information**

Debtor    Renovate America, Inc.                                    Case number (if known)_____
        Name

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49        ☐ 1,000-5,000        ☐ 25,001-50,000
☐ 50-99       ☐ 5,001-10,000      ■ 50,001-100,000
☐ 100-199     ☐ 10,001-25,000    ☐ More than 100,000
☐ 200-999

**15. Estimated assets**

☐ $0-$50,000          ☐ $1,000,001-$10 million       ☐ $500,000,001-$1 billion
☐ $50,001-$100,000     ☐ $10,000,001-$50 million     ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000   ■ $50,000,001-$100 million    ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million    ☐ $100,000,001-$500 million   ☐ More than $50 billion

**16. Estimated liabilities**

☐ $0-$50,000          ☐ $1,000,001-$10 million       ☐ $500,000,001-$1 billion
☐ $50,001-$100,000     ☐ $10,000,001-$50 million     ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000   ☐ $50,000,001-$100 million    ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million    ■ $100,000,001-$500 million   ☐ More than $50 billion

---

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   12/21/2020
            MM  / DD / YYYY

✗ *Shawn N. Stone*                                    Shawn Stone
Signature of authorized representative of debtor    Printed name

Title   Chief Executive Officer

| Debtor | Renovate America, Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**18. Signature of attorney**

✗ _[signature]_ _____     Date   12/21/2020
Signature of attorney for debtor                                    MM  / DD  / YYYY

Mette H. Kurth
_____
Printed name
Culhane Meadows PLLC
_____
Firm name
4023          Kenneth Pike #165
_____
Number        Street

Wilmington _____ DE _____ 19807 _____
City                                       State        ZIP Code

(302) 660-8331 _____        mkurth@cm.law _____
Contact phone                                     Email address

006491 _____                 Delaware _____
Bar number                                        State

**<u>Officer's Certificate</u>**

**December 17, 2020**

The undersigned, Christopher Powell, Secretary and Chief Financial Officer of Renovate America, Inc. and Personal Energy Finance, Inc. (collectively, the "<u>Companies</u>"), hereby certifies as follows:

1.  I am an officer of the Companies and, as such, I am familiar with the facts herein certified and I am duly authorized to certify the same on behalf of the Companies.

2.  Attached hereto as **<u>Exhibit A</u>** is a true, complete, and correct copy of the resolutions (the "<u>Resolutions</u>") of the boards of directors of the Companies (collectively, the "<u>Boards</u>"), duly adopted at a properly convened joint meeting of the Boards on December 1, 2020, in accordance with the applicable bylaws of the Companies.

3.  Since their adoption and execution, the Resolutions have not been modified, rescinded, or amended and are in full force and effect as of the date hereof, and the Resolutions are the only resolutions adopted by the Boards relating to the authorization and ratification of all corporate actions taken in connection with the matters referred to therein.

*[Signature page follows.]*

**IN WITNESS HEREOF**, I have hereunto set my hand as of the date set forth above.

By: _____

Name:  Christopher Powell

Title:  Secretary & Chief Financial Officer

**Exhibit A**

**Resolution of the**
**Board of Directors of Renovate America, Inc.**

**Dated as of December 1, 2020**

WHEREAS, the members of the board of directors (the "Board") of Renovate America, Inc. (the "Company"), hereby take the following actions and adopt the following resolutions pursuant to the organization documents of the Company and the laws of the state of Delaware:

**Chapter 11 Filing**

WHEREAS, the Board met with on numerous occasions and considered presentations by the Company's management (the "Management") and financial, restructuring, and legal advisors (collectively, the "Advisors"), including, but not limited to, materials regarding the Company's liabilities, liquidity and prospects, the strategic alternatives available to it, and the effect of the foregoing on the Company's business; and

WHEREAS, the Board has had the opportunity to consult with the Management and the Advisors of the Company and to consider fully each of the strategic alternatives available to the Company.

NOW, THEREFORE, BE IT RESOLVED, that, in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, and other parties in interest, that the Company shall be, and hereby is, authorized, empowered, and directed to file or cause to be filed a voluntary petition for relief (the "Chapter 11 Case") under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware or another court of proper jurisdiction (the "Bankruptcy Court"); and

RESOLVED, that the Chief Executive Officer, Chief Financial Officer, Chief Legal Officer, or any other duly appointed officer of the Company (collectively, the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents (including the filing of financing statements) as necessary to commence the Chapter 11 Case, and to take any and all action that they deem necessary, appropriate, or desirable to obtain such relief, including, without limitation, any action necessary, appropriate, or desirable to maintain the ordinary course operation of the Company's business.

**Retention of Professionals**

RESOLVED, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the law firm of Bryan Cave Leighton Paisner LLP ("BCLP"), as the Company's counsel, to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and remedies, including filing any pleadings and conducting any potential restructuring or sale process on behalf of the Company; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention

agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain BCLP in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Culhane Meadows PLLC ("Culhane Meadows"), as the Company's co-bankruptcy counsel; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain Culhane Meadows in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Armanino LLP ("Armanino"), as the Company's financial advisor and investment banker; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain Armanino in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Glass Ratner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley"), as the Company's restructuring advisor; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain B. Riley in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Stretto ("Stretto"), as notice, claims, and balloting agent and as administrative advisor to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and remedies; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain Stretto in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary; and

**RESOLVED**, that each of the Authorized Officers be, and hereby is, with power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Officers

deem necessary, proper, or desirable in connection with the Company's Chapter 11 Case, with a view to the successful prosecution of such cases.

**Debtor-in-Possession Financing**

> **WHEREAS**, reference is made to that certain Debtor-In-Possession Credit Agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement") dated as of, or about, the date hereof, by and among the Company, as the borrower and a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, and Finance of America Mortgage LLC, as lender (the "DIP Lender");

> **WHEREAS**, the Company has requested that the DIP Lender provide a secured debtor-in-possession revolving credit facility to the Company;

> **WHEREAS**, the obligation of the DIP Lender to make the extensions of credit to the Company is subject to, among other things, the Company entering into the DIP Credit Agreement and the Company satisfying certain conditions in the DIP Credit Agreement;

> **WHEREAS**, the Company will obtain benefits from the DIP Credit Agreement and it is advisable and in the best interest of the Company that the Company enters into the DIP Credit Agreement and performs its obligations thereunder; and

> **WHEREAS**, the Company will obtain benefits from the other Loan Documents (as defined in the DIP Credit Agreement, the "DIP Loan Documents") and it is advisable and in the best interest of the Company that it enter into each DIP Loan Document to which it is a party and to perform its obligations thereunder, including guaranteeing the obligations of the Company and the Company under the Loan Documents and granting security interests in all or substantially all of its assets.

> **NOW, THEREFORE, BE IT RESOLVED**, that the form, terms, and provisions of the DIP Credit Agreement and each other DIP Loan Document, and the transactions contemplated by the DIP Credit Agreement (including, without limitation, the borrowings thereunder) and each other DIP Loan Document, the transactions contemplated therein, and the guarantees, liabilities, obligations, security interests granted, and notes issued, if any, in connection therewith, be and hereby are authorized, adopted, and approved;

> **RESOLVED**, that the Company will obtain benefits from the DIP Credit Agreement and it is advisable and in the best interest of the Company that the Company enters into the DIP Credit Agreement and performs its obligations thereunder;

> **RESOLVED**, that the Company will obtain benefits from the other DIP Loan Documents and it is advisable and in the best interest of the Company that it enters into the DIP Loan Documents to which it is a party and performs its obligations thereunder, including guaranteeing the obligations of the Company under the Loan Documents and granting security interests in all or substantially all of its assets;

RESOLVED, that the Company's execution and delivery of, and its performance of its obligations (including guarantees) in connection with the DIP Credit Agreement and the other DIP Loan Documents, are hereby, in all respects, authorized and approved; and further resolved, that each of the Authorized Officers, is hereby authorized, empowered, and directed to negotiate the terms of and to execute, deliver, and perform under the DIP Credit Agreement, the other DIP Loan Documents, and any and all other documents, certificates, instruments, agreements, intercreditor agreements, security agreements, pledge agreements, guarantees, mortgages, deeds of trust, and any amendment or any other modification of any of the foregoing (collectively, the "Related Documents") required to consummate the transactions contemplated by the DIP Credit Agreement and any other DIP Loan Document in the name and on behalf of the Company, in the form approved, with such changes therein and modifications and amendments thereto as any of the Authorized Officers may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof. Such execution by any of the Authorized Officers is hereby authorized to be by facsimile, emailed, engraved, or printed as deemed necessary and preferable;

RESOLVED, that each of the Authorized Officers, acting alone or with one or more Authorized Officers, be, and hereby are, authorized, empowered, and directed in the name of, and on behalf of, the Company to seek authorization to enter into the DIP Credit Agreement and each other DIP Loan Document and to seek approval of the use of cash collateral pursuant to a postpetition financing order in interim and final form, and any Authorized Officer be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary to implement the postpetition financing, including providing for adequate protection in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for entry into the DIP Credit Agreement and each other DIP Loan Document and the use of cash collateral in connection with the Company's Chapter 11 Case, which agreements may require the Company to grant adequate protection and liens to the DIP Lender and other lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Officer approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

RESOLVED, that (i) the form, terms, and provisions of the DIP Credit Agreement and all other DIP Loan Documents to which the Company is a party, (ii) the grant of security interests in, pledges of, and liens on all or substantially all of the assets now or hereafter owned by the Company as collateral (including pledges of equity, real property, and personal property as collateral) under the DIP Loan Documents, (iii) the guarantee of obligations by the Company under the DIP Loan Documents, from which the Company will derive value, in each case, be and hereby are, authorized, adopted, and approved, and (iv) any Authorized Officer or other officer of the Company is hereby authorized, empowered, and directed, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, each of the transactions contemplated by the DIP Credit Agreement, substantially in the form provided to the Board, the DIP Loan Documents and such other agreements, fee letters, commitment letters, certificates, instruments, receipts, petitions, motions, or other papers or documents to which the Company is or will be a party or any order entered into in connection with the Chapter 11 Case (collectively with the DIP Credit

Agreement, the other DIP Loan Documents and the Related Documents, the "Financing Documents"), incur and pay or cause to be paid all related fees and expenses, with such changes, additions, and modifications thereto as an Authorized Officer executing the same shall approve;

**RESOLVED**, that the Company, as debtor and debtor-in-possession under the Bankruptcy Code be, and hereby is, authorized, empowered, and directed to incur any and all obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the Financing Documents (collectively, the "Financing Transactions"), including granting liens on its assets to secure such obligations and the refinancing of the obligations outstanding pursuant to the PEFI Warehouse Facility (as defined in the DIP Credit Agreement);

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company, as debtor and debtor in possession, to take such actions as in its discretion is determined to be necessary, desirable, or appropriate to execute, deliver, and file: (a) the Financing Documents and such agreements, certificates, instruments, guaranties, notices, and any and all other documents, including, without limitation, any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of any Financing Documents necessary, desirable, or appropriate to facilitate the Financing Transactions; (b) all petitions, schedules, lists, and other motions, papers, or documents, which shall in its sole judgment be necessary, proper, or advisable, which determination shall be conclusively evidenced by his/her or their execution thereof; (c) such other instruments, certificates, notices, assignments, and documents as may be reasonably requested by the DIP Lender and other parties in interest; and (d) such forms of deposit account control agreements, officer's certificates, and compliance certificates as may be required by the Financing Documents;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company to file or to authorize the DIP Lender to file any Uniform Commercial Code ("UCC") financing statements, any other equivalent filings, any intellectual property or real estate filings and recordings, and any necessary assignments for security or other documents in the name of the Company that either DIP Lender deems necessary or convenient to perfect any lien or security interest granted under the Financing Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the DIP Lender may reasonably request to perfect the security interests of the DIP Lender under the Financing Documents;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the Financing Transactions and all fees and expenses incurred by or on behalf of the Company in connection with the foregoing resolutions, in accordance with the terms of the Financing Documents, which shall in their reasonable business judgment be necessary, proper, or advisable to perform the Company's obligations under or in connection with the

Financing Documents or any of the Financing Transactions and to fully carry out the intent of the foregoing resolutions;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the postpetition financing or any of the Financing Documents or to do such other things which shall in their sole judgment be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his/her or their execution thereof; and

**RESOLVED**, that to the extent the Company serves as the sole member, general partner, managing member, equivalent manager, or other governing body of any limited liability company, corporation, or partnership (each such entity, a "Controlled Company"), each Authorized Officer, as applicable, is authorized, empowered, and directed to take or cause to be taken each of the actions described in these resolutions or any of the actions authorized by these resolutions on behalf of the applicable Controlled Company.

**General Authorizations**

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Officers, each of the Authorized Officers (and their designees and delegates) be, and they hereby are, authorized, empowered, and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such officer's or officers' judgment, shall be necessary, advisable, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to take or cause to be taken in the name of and on behalf of the Company, any and all such other and further action to carry out the intent and accomplish the purposes of the resolutions adopted herein as such purposes related to the Company;

**RESOLVED**, that the Company and the Board have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate has been specifically authorized in advance by resolution of the Board;

**RESOLVED**, that each of the Authorized Officers (and their designees and delegates) be, and hereby is, authorized, empowered, and directed to take all actions, or to not take any action in

the name of the Company, with respect to the transactions contemplated by these resolutions hereunder, as such Authorized Officer shall deem necessary or desirable in such Authorized Officer's reasonable business judgment, as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein; and

**RESOLVED**, that this consent may be executed in any number of counterparts, each of which shall be deemed to be an original, and such counterparts shall constitute but one and the same consent.

\* \* \* \* \*

**Resolution of the**
**Board of Directors of Personal Energy Finance, Inc.**

**Dated as of December 1, 2020**

WHEREAS, the members of the board of directors (the "Board") of Personal Energy Finance, Inc. (the "Company"), hereby take the following actions and adopt the following resolutions pursuant to the organization documents of the Company and the laws of the state of Delaware:

**Chapter 11 Filing**

**WHEREAS**, the Board met with on numerous occasions and considered presentations by the Company's management (the "Management") and financial, restructuring, and legal advisors (collectively, the "Advisors"), including, but not limited to, materials regarding the Company's liabilities, liquidity and prospects, the strategic alternatives available to it, and the effect of the foregoing on the Company's business; and

**WHEREAS**, the Board has had the opportunity to consult with the Management and the Advisors of the Company and to consider fully each of the strategic alternatives available to the Company.

**NOW, THEREFORE, BE IT RESOLVED**, that, in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, and other parties in interest, that the Company shall be, and hereby is, authorized, empowered, and directed to file or cause to be filed a voluntary petition for relief (the "Chapter 11 Case") under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware or another court of proper jurisdiction (the "Bankruptcy Court"); and

**RESOLVED**, that the Chief Executive Officer, Chief Financial Officer, Chief Legal Officer, or any other duly appointed officer of the Company (collectively, the "Authorized Officers"), acting alone or with one or more other Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents (including the filing of financing statements) as necessary to commence the Chapter 11 Case, and to take any and all action that they deem necessary, appropriate, or desirable to obtain such relief, including, without limitation, any action necessary, appropriate, or desirable to maintain the ordinary course operation of the Company's business.

**Retention of Professionals**

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the law firm of Bryan Cave Leighton Paisner LLP ("BCLP"), as the Company's counsel, to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and remedies, including filing any pleadings and conducting any potential restructuring or sale process on behalf of the Company; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention

agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain BCLP in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Culhane Meadows PLLC ("Culhane Meadows"), as the Company's co-bankruptcy counsel; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain Culhane Meadows in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Armanino LLP ("Armanino"), as the Company's financial advisor and investment banker; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain Armanino in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Glass Ratner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley"), as the Company's restructuring advisor; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain B. Riley in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ the firm of Stretto ("Stretto"), as notice, claims, and balloting agent and as administrative advisor to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and remedies; and, in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain Stretto in accordance with applicable law;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Officers, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary; and

**RESOLVED**, that each of the Authorized Officers be, and hereby is, with power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Officers

deem necessary, proper, or desirable in connection with the Company's Chapter 11 Case, with a view to the successful prosecution of such cases.

## Debtor-in-Possession Financing

**WHEREAS**, reference is made to that certain Debtor-In-Possession Credit Agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement") dated as of, or about, the date hereof, by and among the Company, as the borrower and a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, and Finance of America Mortgage LLC, as lender (the "DIP Lender");

**WHEREAS**, the Company has requested that the DIP Lender provide a secured debtor-in-possession revolving credit facility to the Company;

**WHEREAS**, the obligation of the DIP Lender to make the extensions of credit to the Company is subject to, among other things, the Company entering into the DIP Credit Agreement and the Company satisfying certain conditions in the DIP Credit Agreement;

**WHEREAS**, the Company will obtain benefits from the DIP Credit Agreement and it is advisable and in the best interest of the Company that the Company enters into the DIP Credit Agreement and performs its obligations thereunder; and

**WHEREAS**, the Company will obtain benefits from the other Loan Documents (as defined in the DIP Credit Agreement, the "DIP Loan Documents") and it is advisable and in the best interest of the Company that it enter into each DIP Loan Document to which it is a party and to perform its obligations thereunder, including guaranteeing the obligations of the Company and the Company under the Loan Documents and granting security interests in all or substantially all of its assets.

**NOW, THEREFORE, BE IT RESOLVED**, that the form, terms, and provisions of the DIP Credit Agreement and each other DIP Loan Document, and the transactions contemplated by the DIP Credit Agreement (including, without limitation, the borrowings thereunder) and each other DIP Loan Document, the transactions contemplated therein, and the guarantees, liabilities, obligations, security interests granted, and notes issued, if any, in connection therewith, be and hereby are authorized, adopted, and approved;

**RESOLVED**, that the Company will obtain benefits from the DIP Credit Agreement and it is advisable and in the best interest of the Company that the Company enters into the DIP Credit Agreement and performs its obligations thereunder;

**RESOLVED**, that the Company will obtain benefits from the other DIP Loan Documents and it is advisable and in the best interest of the Company that it enters into the DIP Loan Documents to which it is a party and performs its obligations thereunder, including guaranteeing the obligations of the Company under the Loan Documents and granting security interests in all or substantially all of its assets;

**RESOLVED**, that the Company's execution and delivery of, and its performance of its obligations (including guarantees) in connection with the DIP Credit Agreement and the other DIP Loan Documents, are hereby, in all respects, authorized and approved; and further resolved, that each of the Authorized Officers, is hereby authorized, empowered, and directed to negotiate the terms of and to execute, deliver, and perform under the DIP Credit Agreement, the other DIP Loan Documents, and any and all other documents, certificates, instruments, agreements, intercreditor agreements, security agreements, pledge agreements, guarantees, mortgages, deeds of trust, and any amendment or any other modification of any of the foregoing (collectively, the "Related Documents") required to consummate the transactions contemplated by the DIP Credit Agreement and any other DIP Loan Document in the name and on behalf of the Company, in the form approved, with such changes therein and modifications and amendments thereto as any of the Authorized Officers may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof. Such execution by any of the Authorized Officers is hereby authorized to be by facsimile, emailed, engraved, or printed as deemed necessary and preferable;

**RESOLVED**, that each of the Authorized Officers, acting alone or with one or more Authorized Officers, be, and hereby are, authorized, empowered, and directed in the name of, and on behalf of, the Company to seek authorization to enter into the DIP Credit Agreement and each other DIP Loan Document and to seek approval of the use of cash collateral pursuant to a postpetition financing order in interim and final form, and any Authorized Officer be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary to implement the postpetition financing, including providing for adequate protection in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for entry into the DIP Credit Agreement and each other DIP Loan Document and the use of cash collateral in connection with the Company's Chapter 11 Case, which agreements may require the Company to grant adequate protection and liens to the DIP Lender and other lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Officer approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

**RESOLVED**, that (i) the form, terms, and provisions of the DIP Credit Agreement and all other DIP Loan Documents to which the Company is a party, (ii) the grant of security interests in, pledges of, and liens on all or substantially all of the assets now or hereafter owned by the Company as collateral (including pledges of equity, real property, and personal property as collateral) under the DIP Loan Documents, (iii) the guarantee of obligations by the Company under the DIP Loan Documents, from which the Company will derive value, in each case, be and hereby are, authorized, adopted, and approved, and (iv) any Authorized Officer or other officer of the Company is hereby authorized, empowered, and directed, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, each of the transactions contemplated by the DIP Credit Agreement, substantially in the form provided to the Board, the DIP Loan Documents and such other agreements, fee letters, commitment letters, certificates, instruments, receipts, petitions, motions, or other papers or documents to which the Company is or will be a party or any order entered into in connection with the Chapter 11 Case (collectively with the DIP Credit

Agreement, the other DIP Loan Documents and the Related Documents, the "Financing Documents"), incur and pay or cause to be paid all related fees and expenses, with such changes, additions, and modifications thereto as an Authorized Officer executing the same shall approve;

**RESOLVED**, that the Company, as debtor and debtor-in-possession under the Bankruptcy Code be, and hereby is, authorized, empowered, and directed to incur any and all obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the Financing Documents (collectively, the "Financing Transactions"), including granting liens on its assets to secure such obligations and the refinancing of the obligations outstanding pursuant to the PEFI Warehouse Facility (as defined in the DIP Credit Agreement);

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company, as debtor and debtor in possession, to take such actions as in its discretion is determined to be necessary, desirable, or appropriate to execute, deliver, and file: (a) the Financing Documents and such agreements, certificates, instruments, guaranties, notices, and any and all other documents, including, without limitation, any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of any Financing Documents necessary, desirable, or appropriate to facilitate the Financing Transactions; (b) all petitions, schedules, lists, and other motions, papers, or documents, which shall in its sole judgment be necessary, proper, or advisable, which determination shall be conclusively evidenced by his/her or their execution thereof; (c) such other instruments, certificates, notices, assignments, and documents as may be reasonably requested by the DIP Lender and other parties in interest; and (d) such forms of deposit account control agreements, officer's certificates, and compliance certificates as may be required by the Financing Documents;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company to file or to authorize the DIP Lender to file any Uniform Commercial Code ("UCC") financing statements, any other equivalent filings, any intellectual property or real estate filings and recordings, and any necessary assignments for security or other documents in the name of the Company that either DIP Lender deems necessary or convenient to perfect any lien or security interest granted under the Financing Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the DIP Lender may reasonably request to perfect the security interests of the DIP Lender under the Financing Documents;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the Financing Transactions and all fees and expenses incurred by or on behalf of the Company in connection with the foregoing resolutions, in accordance with the terms of the Financing Documents, which shall in their reasonable business judgment be necessary, proper, or advisable to perform the Company's obligations under or in connection with the

Financing Documents or any of the Financing Transactions and to fully carry out the intent of the foregoing resolutions;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the postpetition financing or any of the Financing Documents or to do such other things which shall in their sole judgment be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his/her or their execution thereof; and

**RESOLVED**, that to the extent the Company serves as the sole member, general partner, managing member, equivalent manager, or other governing body of any limited liability company, corporation, or partnership (each such entity, a "Controlled Company"), each Authorized Officer, as applicable, is authorized, empowered, and directed to take or cause to be taken each of the actions described in these resolutions or any of the actions authorized by these resolutions on behalf of the applicable Controlled Company.

**General Authorizations**

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Officers, each of the Authorized Officers (and their designees and delegates) be, and they hereby are, authorized, empowered, and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such officer's or officers' judgment, shall be necessary, advisable, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to take or cause to be taken in the name of and on behalf of the Company, any and all such other and further action to carry out the intent and accomplish the purposes of the resolutions adopted herein as such purposes related to the Company;

**RESOLVED**, that the Company and the Board have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate has been specifically authorized in advance by resolution of the Board;

**RESOLVED**, that each of the Authorized Officers (and their designees and delegates) be, and hereby is, authorized, empowered, and directed to take all actions, or to not take any action in

the name of the Company, with respect to the transactions contemplated by these resolutions hereunder, as such Authorized Officer shall deem necessary or desirable in such Authorized Officer's reasonable business judgment, as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein; and

**RESOLVED**, that this consent may be executed in any number of counterparts, each of which shall be deemed to be an original, and such counterparts shall constitute but one and the same consent.

\* \* \* \* \*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| RENOVATE AMERICA, INC. | ) ) | |
| Debtor. | ) ) ) | |

## STATEMENT OF CORPORATE OWNERSHIP

The following is the list of entities that directly or indirectly own 10% or more of any class of the above-captioned debtor's equity interests. This list has been prepared in accordance with Fed. R. Bankr. P. 1007(a)(1) and Fed. R. Bankr. P. 7007.1 for filing in this chapter 11 case.

| Holder Name | Approximate Percentage of Equity Interests Held |
|---|---|
| Thrivepoint Financial Holdings, Inc. | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RENOVATE AMERICA, INC. | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**LIST OF EQUITY SECURITY HOLDERS[1] (RULE 1007(a)(3))**

Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, the following identifies all holders having a direct ownership interest in the above-captioned debtor and debtor in possession:

| Name | Last Known Address | Kind/Class of Interest | Number of Interests Held |
|---|---|---|---|
| Thrivepoint Financial Holdings, Inc. | 16870 W. Bernardo Dr., Ste. 408 San Diego, CA 92127 | Common Shares | 100% |

---

[1]    This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed are as of the date of commencement of the chapter 11 case.

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
</table>

Debtor name____Renovate America, Inc._____

United States Bankruptcy Court for the: _____ District of ___Delaware____
                                                                (State)

Case number (If known): _____

☐ Check if this is an
   amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SFII Rancho Bernardo, LLC 260 California St, Suite 1100 San Francisco, CA 94111 | Steve Blue Email: blue@swiftrp.com | Rent | Unliquidated | | | $13,627,447.00 |
| 2 | State of California Office of District Attorney 3960 Orange St Riverside, CA  92501 | Lauren Dossey Phone: 951-955-5400 Email: LaurenDossey@RivCoDA.org | Legal Settlement | | | | $2,700,000.00 |
| 3 | Larson O'Brien LLP 555 South Flower Street, Suite 4400 Los Angeles, CA 90071 | Email: dceballos@larsonobrienlaw.com | Professional Services | | | | $891,484.57 |
| 4 | ReedSmith LLP 33489 PO BOX 39000 San Francisco, CA 94139 | Email: caach@reedsmith.com | Professional Services | | | | $832,889.80 |
| 5 | CBRE, Inc. P.O. Box 740935 Location Code 2142 Los Angeles, CA 90074-0935 | Email: Luzviminda.Thrall@cbre.com | Trade Debts | | | | $323,941.43 |
| 6 | Concord Servicing Corporation 4150 N Drinkwater Blvd Suite 200 Scottsdale, AZ 85251 | Email: billing@concordservicing.com | Trade Debts | | | | $310,080.93 |
| 7 | Squire Patton Boggs (US) LLP 41 South High Street Columbus, OH 43215 | Email: aaron.seamon@squirepb.com | Professional Services | | | | $220,178.15 |
| 8 | Hunton Andrews Kurth LLP PO Box 405759 Atlanta, GA 30384-5759 | Email: lgrosse@HuntonAK.com | Professional Services | | | | $144,035.72 |
| 9 | Goodwin Procter LLP 100 Northern Avenue Boston, MA 02210 | Email: MSheldon@goodwinprocter.com | Professional Services | | | | $113,143.07 |

| Debtor | Renovate America, Inc. | Case number (if known) | | |
|---|---|---|---|---|
| | Name | | | |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 10 | Best Best & Krieger LLP 3390 University Avenue 5th Floor Riverside, CA 92502 | Steven DeBaun, Esq., General Counsel, WRCOG Email: steven.debaun@bbklaw.com | Professional Services | | | | $111,586.51 |
| 11 | Corelogic P O Box 847239 Dallas, TX 75284 | Email: pisgar.sna.ca@corelogic.com | Trade Debts | | | | $108,941.76 |
| 12 | National Economic Research Associates, Inc. 1255 23rd Street NW Washington, DC 20037 | Xiaoling Ang Phone: 202-466-9259 Email: lingling.ang@nera.com | Trade Debts | | | | $63,672.87 |
| 13 | West Publishing Corporation PO Box 6292 Carol Stream, IL 60197-6292 | Email: WestAccountsReceivable@thomsonreuters.com | Trade Debts | | | | $50,716.97 |
| 14 | Winston & Strawn, LLP 200 Park Avenue New York, NY 10166 | Email: dpassage@winston.com | Professional Services | | | | $45,483.68 |
| 15 | Five9 Inc 4000 Executive Parkway, Suite 400 San Ramon, CA 94583 | Email: billing@five9.com | Trade Debts | | | | $23,283.73 |
| 16 | Hudson Cook, LLP 7037 Ridge Rd. Ste. 300 Hanover, MD 21076 | Email: mmclean@hudco.com | Professional Services | | | | $18,925.00 |
| 17 | Brightcove Inc PO Box 83318 Woburn, MA 01813 | Email: fin-express@brightcove.com | Trade Debts | | | | $17,000.00 |
| 18 | Littler Mendelson, PC PO Box 45547 San Francisco, CA 94145-0547 | Email: clientpayments@littler.com | Professional Services | | | | $14,114.00 |
| 19 | Trantor, Inc. 3723 Haven Ave, #120 Menlo Park, CA  94025 | Sanjul Saxena Phone: 510-703-4506 Email: sanjul.saxena@trantorinc.com | Trade Debts | | | | $12,500.00 |
| 20 | Electronic Printing Solutions, LLC 4879 Ronson Ct Suite C San Diego, CA 92111 | Email: mchau@epsolution.com | Trade Debts | | | | $11,144.66 |
| 21 | Fidelity National Information Services, Inc. PO Box 4535 Carol Stream, IL 60197-4535 | Email: Nermina.Selman@fisglobal.com | Trade Debts | | | | $11,000.00 |
| 22 | SHI International Corp 290 Davidson Avenue Somerset, NJ 08873 | Email: matt_soles@shi.com | Trade Debts | | | | $9,849.26 |
| 23 | StreamSource Technologies Inc 25 Broadway, 9th Floor New York, NY 10004 | Email: rupesh@skeps.com | Trade Debts | | | | $9,540.02 |

Debtor    Renovate America, Inc.                                    Case number (if known)_____
         ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
         Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 24 | Secure Talent, Inc. 2385 Northside Drive, Suite 250 San Diego, CA 92108 | Email: accounts.receivable@eastridge.com | Trade Debts | | | | $8,978.55 |
| 25 | Jobvite PO Box 208262 Dallas, TX 75320-8262 | Email: ar@jobvite.com | Trade Debts | | | | $7,500.00 |
| 26 | Folger Levin LLP 199 Fremont Street 20th Floor San Francisco, CA 94105 | Email: cconner@folgerlevin.com | Professional Services | | | | $6,796.00 |
| 27 | Trace3, Inc. PO Box 847467 Los Angeles, CA 90084-7467 | Email: accountsreceivable@trace3.com | Trade Debts | | | | $6,211.98 |
| 28 | McGlinchey Stafford PO Box 2153 Birmingham, AL 35287 | Email: accountsreceivable@mcglinchey.com | Professional Services | | | | $4,641.59 |
| 29 | The Bank of New York Mellon Trust Company, N.A. PO Box 392013 Pittsburgh, PA 15251-9013 | Email: stuart.weiss@bnymellon.com Phone: 213-553-9510 | Trade Debts | | | | $4,400.00 |
| 30 | Baker Tilly US, LLP 4100 Newport Place Drive Newport, CA 92660 | Email: Adam.Bullock@bakertilly.com | Professional Services | | | | $3,175.00 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RENOVATE AMERICA, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CERTIFICATION OF CREDITOR MATRIX

Pursuant to Rule 1007-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, the above-captioned debtor and its affiliated debtors in possession (collectively, the "Debtors") hereby certify that the Consolidated List of Creditors submitted contemporaneously herewith (the "Creditor Matrix") contains the names and addresses of the Debtors' creditors. To the best of the Debtors' knowledge, the Creditor Matrix is complete, correct, and consistent with Debtors' books and records.

The information contained herein is based upon a review of the Debtors' books and records as of the petition date. However, no comprehensive legal and/or factual investigations with regard to possible defenses to any claims set forth in the Creditor Matrix have been completed. Therefore, the listing does not, and should not, be deemed to constitute: (1) a waiver of any defense to any listed claims; (2) an acknowledgement of the allowability of any listed claims; and/or (3) a waiver of any other right or legal position of the Debtors.

**Fill in this information to identify the case and this filing:**

Debtor Name __Renovate America, Inc.__

United States Bankruptcy Court for the: _____ District of __Delaware__
(State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* ____

☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☑ Other document that requires a declaration __Statement of Corporate Ownership, List of Equity Holders and Certification of Creditor Matrix__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __12/21/2020__          ✗ *Shawn N. Stone*
      MM / DD / YYYY                Signature of individual signing on behalf of debtor

                       Shawn Stone
                       Printed name

                       Chief Executive Officer
                       Position or relationship to debtor